## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| LONNIE RANDOLPH, | ) | |
| individually and on behalf of the classes | ) | |
| defined herein, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1 : 08 CV 3212 |
| | ) | Judge Castillo |
| CROWN ASSET MANAGEMENT, LLC, | ) | Magistrate Judge Brown |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM IN SUPPORT OF
### PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Plaintiff has requested that this Court enter an order determining that this action may proceed as a class action against defendant Crown Asset Management, LLC. This memorandum is submitted in support of that motion.

## I.      NATURE OF THE CASE

This action seeks redress for the conduct of defendant, a debt buyer, in filing collection actions on purported debts to which it did not have lawful title. In order to protect Illinois residents against being sued for the same debts twice, the Illinois Collection Agency Act ("ICAA") was amended effective January 1, 2008 to define debt buyers as "collection agencies." This makes applicable the licensing requirements of the ICAA and the special assignment requirements in 225 ILCS 425/8b. Illinois courts had held prior to the amendment that a party that was required to but did not have such an assignment does not have a valid claim and that the defendant in such a case is entitled to judgment. *Business Service Bureau, Inc. v. Webster*, 298 Ill. App. 3d 257; 698 N.E.2d 702 (4th Dist. 1998).

ICAA §8b provides:

> **Sec. 8b.  An account may be assigned to a collection agency for collection with title passing to the collection agency to enable collection of the account in the agency's name as assignee for the creditor provided:**
>
> > **(a)      The assignment is manifested by a written agreement, separate**

> **from and in addition to any document intended for the purpose of listing a debt with a collection agency. The document manifesting the assignment shall specifically state and include:**
>
> **(i)      the effective date of the assignment; and**
>
> **(ii)     the consideration for the assignment.**
>
> **(b)    The consideration for the assignment may be paid or given either before or after the effective date of the assignment. The consideration may be contingent upon the settlement or outcome of litigation and if the claim being assigned has been listed with the collection agency as an account for collection, the consideration for assignment may be the same as the fee for collection.**
>
> **(c)    All assignments shall be voluntary and properly executed and acknowledged by the corporate authority or individual transferring title to the collection agency before any action can be taken in the name of the collection agency.**
>
> **(d)    No assignment shall be required by any agreement to list a debt with a collection agency as an account for collection.**
>
> **(e)    No litigation shall commence in the name of the licensee as plaintiff unless:**
>
> **(i)      there is an assignment of the account that satisfies the requirements of this Section and**
>
> **(ii)     the licensee is represented by a licensed attorney at law...**

The assignment must be attached to the complaint. *Candice Co. v. Ricketts*, 281 Ill.App.3d 359, 362, 666 N.E.2d 722 (1st Dist. 1996). In addition, the assignee is required "in his or her pleading on oath allege that he or she is the actual bona fide owner thereof, and set forth how and when he or she acquired title...." 735 ILCS 5/2-403(a).

Defendant, a debt buyer regulated by the ICAA since January 1, 2008, systematically files collection lawsuits without compliance with ICAA §8b and, therefore, without valid claims. More than 80 such lawsuits have been filed in Cook County alone since the beginning of 2008.

In this action, plaintiff complains that defendant's practices violate the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§1692e and 1692f, ICAA §9 and the Illinois

2

Consumer Fraud Act ("ICFA"), 815 ILCS 505/2.

Furthermore, defendant filed an affidavit claiming that it was a "holder in due course" of plaintiff's alleged debt. Such a claim was false, because as it is a "debt buyer," defendant cannot be considered a holder in due course because defendant has "notice that the instrument is overdue or has been dishonored...." 810 ILCS 5/3-302. Also, as the purported debt is not a "negotiable instrument," the concept of a "holder in due course" does not apply to this situation. This behavior violates both the FDCPA and the ICAA.

Based on the foregoing, plaintiff seeks to certify three classes, as defined in his motion. Certification of each class is appropriate.

## II.    THE FAIR DEBT COLLECTION PRACTICES ACT

The FDCPA states that its purpose, in part, is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. §1692(e). It is designed to protect consumers from unscrupulous collectors, whether or not there is a valid debt. *Mace v. Van Ru Credit Corp.*, 109 F.3d 338 (7th Cir. 1997); *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998); *Baker v. G.C. Services Corp.*, 677 F.2d 775, 777 (9th Cir. 1982); *McCartney v. First City Bank*, 970 F.2d 45, 47 (5th Cir. 1992). The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements, in connection with the collection of a debt; it also requires debt collectors to give debtors certain information. 15 U.S.C. §§1692d, 1692e, 1692f and 1692g.

In enacting the FDCPA, Congress recognized the:

> **universal agreement among scholars, law enforcement officials, and even debt collectors that the number of persons who willfully refuse to pay just debts is minuscule [sic].... [T]he vast majority of consumers who obtain credit fully intend to repay their debts. When default occurs, it is nearly always due to an unforeseen event such as unemployment, overextension, serious illness, or marital difficulties or divorce.**

S. Rep. No. 382, 95th Cong., 1st Sess. 3 (1977), reprinted in 1977 USCCAN 1695, 1697.

The Seventh Circuit has held that whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of an "unsophisticated consumer." *Avila v. Rubin*, 84 F.3d

3

222 (7th Cir. 1996); *Gammon v. GC Services, LP*, 27 F.3d 1254 (7th Cir. 1994). The standard is an objective one – whether the plaintiff or any class member was misled is not an element of a cause of action. "The question is not whether these plaintiffs were deceived or misled, but rather whether an unsophisticated consumer would have been misled." *Beattie v. D.M. Collections, Inc.*, 754 F.Supp. 383, 392 (D. Del. 1991).

Because it is part of the Consumer Credit Protection Act, 15 U.S.C. §§1601 et seq., the FDCPA should be liberally construed in favor of the consumer to effectuate its purposes. *Cirkot v. Diversified Fin. Services, Inc.*, 839 F.Supp. 941 (D. Conn. 1993).

> **The [Consumer Credit Protection] Act is remedial in nature, designed to remedy what Congressional hearings revealed to be unscrupulous and predatory creditor practices throughout the nation. Since the statute is remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated.**

*N.C. Freed Co. v. Board of Governors*, 473 F.2d 1210, 1214 (2d Cir. 1973).

Statutory damages are recoverable for violations, whether or not the consumer proves actual damages. *Bartlett v. Heibl*, 128 F.3d 497, 499 (7th Cir.1997); *Baker*, 677 F.2d at 780-1; *Woolfolk v. Van Ru Credit Corp.*, 783 F. Supp. 724, 727 and n. 3 (D. Conn. 1990); *Cacace v. Lucas*, 775 F. Supp. 502 (D. Conn. 1990); *Riveria v. MAB Collections, Inc.*, 682 F. Supp. 174, 177 (W.D. N.Y. 1988); *Kuhn v. Account Control Technol.*, 865 F. Supp. 1443, 1450 (D.Nev. 1994); *In re Scrimpsher*, 17 B.R. 999, 1016-7 (Bankr. N.D. N.Y. 1982); *In re Littles*, 90 B.R. 669, 680 (Bankr. E.D. Pa. 1988), *aff'd as modified sub nom. Crossley v. Lieberman*, 90 B.R. 682 (E.D. Pa. 1988), *aff'd*, 868 F.2d 566 (3d Cir. 1989).

The FDCPA encourages consumers to act as "private attorneys general" to enforce the public policies expressed therein. *Crabill v. Trans Union*, L.L.C., 259 F.3d 662, 666 (7th Cir. 2001); *Baker*, 677 F.2d at 780. "Congress intended the Act to be enforced primarily by consumers...." *FTC v. Shaffner*, 626 F.2d 32, 35 (7th Cir. 1980).

Plaintiff need not prove intent, bad faith or negligence in an FDCPA case. The "FDCPA is a strict liability statute," and "proof of one violation is sufficient to support summary judgment

for the plaintiff." *Cacace v. Lucas*, 775 F. Supp. at 505.  Accord, *Turner v. J.V.D.B. & Associates, Inc.*, 330 F.3d 991, 995 (7th Cir. 2003); *Gearing v. Check Brokerage Corp.*, 233 F.3d 469, 472 (7th Cir.2000).

## III.    STANDARD FOR CLASS CERTIFICATION

Recently, the Second Circuit noted that class actions allow for the aggregation of small claims held by many consumers.  Denial of certification would lead to a situation where consumers holding a small claim would be less likely to pursue relief given the costs involved, to the benefit of businesses which, in violating the law, obtain a significant financial benefit from their actions without fear of meaningful litigation.  *Ross v. Bank of America NA*, 524 F.3d 217 (2d Cir. 2008).

*Eshaghi v. Hanley Dawson Cadillac Co.*, 214 Ill.App.3d 995, 574 N.E.2d 760, 764, 766 (1st Dist. 1991) found that class actions are essential to enforce laws protecting consumers:

> **In a large and impersonal society, class actions are often the last barricade of consumer protection.... To consumerists, the consumer class action is an inviting procedural device to cope with frauds causing small damages to large groups.  The slight loss to the individual, when aggregated in the coffers of the wrongdoer, results in gains which are both handsome and tempting. The alternatives to the class action  --  private suits or governmental actions -- have been so often found wanting in controlling consumer frauds that not even the ardent critics of class actions seriously contend that they are truly effective.  The consumer class action, when brought by those who have no other avenue of legal redress, provides restitution to the injured, and deterrence of the wrongdoer.**

Congress expressly recognized the propriety of a class action under the FDCPA by providing special damage provisions and criteria in 15 U.S.C. §§1692k(a) and (b) for FDCPA class action cases.  As a result, scores of FDCPA class actions have been certified over the past several years.  See, *e.g.*, *Ramirez v. Palisades Collection LLC*, 2008 U.S. Dist. LEXIS 24921 (N.D.Ill. Mar. 28, 2008), *Balogun v. Midland Credit Management, LLC*, 2007 U.S. Dist. LEXIS 74845 (S.D.Ind. Oct. 5, 2007), *Lau v. Arrow Financial Services, LLC*, 245 F.R.D. 620 (N.D.Ill. 2007), *Blarek v. Encore Receivable Management, Inc.*, 244 F.R.D. 525 (E.D.Wis. 2007), *Wahl v. Midland Credit Management, LLC*, 243 F.R.D. 291 (N.D.Ill. 2007).

## IV.     THE CLASSES MEET THE REQUIREMENTS OF RULE 23

### A.     Rule 23(a)(1) – Numerosity

Fed.R.Civ.P. 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable."  "When the class is large, numbers alone are dispositive...."  *Riordan*, 113 F.R.D. at 62.  Where the class numbers at least 40, joinder is generally considered impracticable. *Cypress v. Newport News General & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967) (18 sufficient); *Swanson v. American Consumer Industries*, 415 F.2d 1326, 1333 (7th Cir. 1969) (40 sufficient); *Riordan*, 113 F.R.D. 60 (10-29 sufficient); *Philadelphia Electric Co. v. Anaconda American Brass Co.*, 43 F.R.D. 452, 463 (E.D. Pa. 1968) (25 sufficient); *Sala v. National R. Pass. Corp.*, 120 F.R.D. 494, 497 (E.D. Pa. 1988) (40-50 sufficient); *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 184 (N.D. Ill. 1992) (about 70).  It is not necessary that the precise number of class members be known.  "A class action may proceed upon estimates as to the size of the proposed class."  *In re Alcoholic Beverages Litigation*, 95 F.R.D. 321 (E.D. N.Y. 1982); *Lewis v. Gross*, 663 F. Supp. 1164, 1169 (E.D. N.Y. 1986).

The court may "make common sense assumptions in order to find support for numerosity."  *Evans v. United States Pipe & Foundry*, 696 F.2d 925, 930 (11th Cir. 1983). "[T]he court may assume sufficient numerousness where reasonable to do so in absence of a contrary showing by defendant, since discovery is not essential in most cases in order to reach a class determination.... Where the exact size of the class is unknown, but it is general knowledge or common sense that it is large, the court will take judicial notice of this fact and will assume joinder is impracticable."  2 Newberg on Class Actions (3d ed. 1992), §7.22.A.

For example,  it is reasonable to infer that the number of class members exceeds the minimum necessary from the use by a large collection agency of a form letter.  *Swiggett v. Watson*, 441 F. Supp. 254, 256 (D. Del. 1977) (in action challenging transfers of title pursuant to Delaware motor vehicle repairer's lien, fact that Department of Motor Vehicles issued printed form for such transfer in and of itself sufficient to show that numerosity requirement was

satisfied); *Westcott v. Califano*, 460 F. Supp. 737, 744 (D. Mass. 1978) (in action challenging certain welfare policies, existence of policies and 148 families who were denied benefits to which policies applied sufficient to show numerosity, even though it was impossible to identify which of 148 families were denied benefits because of policies complained of); *Carr*, 1995 U.S. Dist. LEXIS 567 (FDCPA class certified regarding defendant Trans Union's transmission of misleading collection notices to consumers in which court inferred numerosity from the use of form letters); *Colbert*, 1995 U.S. Dist. LEXIS 578 (same); *Keele*, 1996 U.S. Dist. LEXIS 3253.

Here, the volume of cases filed by defendant, coupled with its practice of omitting an assignment that complies with ICAA §8b, makes it reasonable to infer numerosity. Public record searches show that defendant debt buyer has filed more 80 lawsuits in Cook County alone in 2008, without attaching an assignment; the classes here include residents of the entire state of Illinois. Thus, Class One certainly satisfies Fed.R.Civ.P. 23(a)(1). Classes Two and Three have longer class periods; a fair inference can be drawn that these classes satisfy Rule 23(a)(1) as well.

### B.     Rules 23(a)(2) and 23(b)(3)  – Predominance of common questions

Fed.R.Civ.P. 23(a)(2) requires that there be a common question of law *or* fact. Rule 23(b)(3) requires that the questions of law or fact common to all members of the class predominate over questions pertaining to individual members.

These requirements are normally satisfied when there is an essential common factual link between all class members and the defendants for which the law provides a remedy. *Halverson v. Convenient Food Mart, Inc.*, 69 F.R.D. 331, 334 (N.D. Ill. 1974). Where a question of law involves "standardized conduct of the defendants toward members of the proposed class, a common nucleus of operative facts is typically presented, and the commonality requirement ... is usually met." *Franklin v. City of Chicago*, 102 F.R.D. 944, 949 (N.D. Ill. 1984); accord, *Patrykus v. Gomilla*, 121 F.R.D. 357, 361 (N.D. Ill. 1988); *Carroll v. United Compucred Collections*, 1-99-0152 H/G, 2002 U.S. Dist. LEXIS 25032, *43-44 (M.D. Tenn., Nov. 15,

7

2002), adopted in pertinent part, 2003 U.S. Dist. LEXIS 5996 (M.D. Tenn., Mar. 31, 2003),

aff'd, 399 F.3d 620 (6th Cir. 2005); *Wahl v. Midland Credit Mgmt.*, 06 C 1708, 2007 U.S. Dist.

LEXIS 39626, *14-15 (N.D. Ill., May 30, 2007); *Smith v. Nike Retail Services, Inc.*, 234 F.R.D.

648, 659 (N.D. Ill. 2006).  The authorities hold that cases dealing with the legality of

standardized documents or conduct are generally appropriate for resolution by means of a class

action because the document or conduct is the focal point of the analysis.  *Halverson*, supra, 69

F.R.D. at 334-336; *Haroco v. American Nat'l Bank*, 121 F.R.D. 664, 669 (N.D. Ill. 1988)

(improper computation of interest); *Kleiner v. First Nat'l Bank*, 97 F.R.D. 683, 692 (N.D. Ga.

1983) (same); *Heastie v. Community Bank*, 125 F.R.D. 669, 675 (N.D. Ill. 1989)  (execution of

home improvement financing documents in sequence that evaded consumers' rescission rights);

*Carroll v. United Compucred Collections*, 1-99-0152 H/G, 2002 U.S. Dist. LEXIS 25032, *47-

48 (M.D. Tenn., Nov. 15, 2002) (collection practices).

Each class has "common nucleus of operative fact," *Halverson*, 69 F.R.D. at 335.  The

fact that binds members of Class One together is that defendant filed lawsuits against the

members of the class without attaching an affidavit that complies with ICAA §8b; each class

member has the same legal claims against defendant for that conduct, based upon the FDCPA,

ICAA and ICFA.

Classes Two and Three have claims based upon the false representation made by

defendant that it was a "holder in due course."  Class Two's legal claim is based upon the

FDCPA, while Class Three has a claim based upon the ICAA.  Both legal claims, however, are

based on the same basic theory – that defendant made false, misleading and unfair

representations in order to collect on a debt.

The only individual issue is the identification of the class members, a matter capable of

ministerial determination from defendant's records, the records of its attorneys, or court files.

Questions readily answerable from defendant's files do not present an obstacle to class

certification.  *Heastie v. Community Bank*, 125 F.R.D. 669 (N.D. Ill. 1989) (court found that

common issues predominated where individual questions of injury and damages could be determined by "merely comparing the contract between the consumer and the contractor with the contract between the consumer and Community Bank").

In any event, the Seventh Circuit has held that the need for "separate proceedings of some character ... to determine the entitlements of the individual class members to relief" should "not defeat class treatment of the question whether defendants violated [the law]." *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004). "Once that question is answered, if it is answered in favor of the class, a global settlement ... will be a natural and appropriate sequel. And if there is no settlement, that won't be the end of the world. Rule 23 allows district courts to devise imaginative solutions to problems created by the presence in a class action litigation of individual damages issues. Those solutions include (1) bifurcating liability and damage trials with the same or different juries; (2) appointing a magistrate judge or special master to preside over individual damages proceedings; (3) decertifying the class after the liability trial and providing notice to class member concerning how they may proceed to prove damages; (4) creating subclasses; or (5) altering or amending the class." *Id.*

### C.      Rule 23(a)(3) – Typicality

The rule requires that the claims of the named plaintiff be typical of the claims of the class:

> **A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory. The typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members. Thus, similarity of legal theory may control even in the face of differences of fact.**

*De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) (citation omitted).

In the instant case, typicality is inherent in the class definition. By definition, each of the class members has been subjected to the same practice as the plaintiff.

### D.      Rule 23(a)(4) – Adequacy of representation

The rule also requires that the named plaintiff provide fair and adequate protection for the

interests of the class.  That protection involves two factors:  (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (b) the plaintiff must not have interests antagonistic to those of the class.  *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992); accord, *Wetzel v. Liberty Mutual Ins. Co.*, 508 F.2d 239, 247 (3d Cir. 1975); *In re Alcoholic Beverages Litigation*, 95 F.R.D. 321.

Plaintiff understands the obligations of a class representative, and has retained experienced counsel, as is indicated by <u>Exhibit B</u>, which sets forth counsel's qualifications.

The second relevant consideration under Rule 23(a)(4) is whether the interests of the named plaintiff are coincident with the general interests of the class.  Here, both plaintiff and the class members seek money damages as the result of defendant's unlawful collection practices.  Given the identity of claims between plaintiff and the class members, there is no potential for conflicting interests in this action.  There is no antagonism between the interests of the named plaintiff and those of the class.

### E.       Rule 23(b)(3) – Superiority

Efficiency is the primary focus in determining whether the class action is the superior method for resolving the controversy presented.  *Eovaldi v. First Nat'l Bank*, 57 F.R.D. 545 (N.D. Ill. 1972).  The Court is required to determine the best available method for resolving the controversy in keeping with judicial integrity, convenience, and economy.  *Scholes*, 143 F.R.D. at 189; *Hurwitz v. R.B. Jones Corp.*, 76 F.R.D. 149 (W.D. Mo. 1977).  It is proper for a court, in deciding the "best" available method, to consider the "...inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually."  *Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1165 (7th Cir. 1974).

In this case there is no better method available for the adjudication of the claims which might be brought by each individual debtor.  The vast majority of debtors are undoubtedly unaware that their rights are being violated.  In addition, persons from whom defendant is

attempting to collect allegedly delinquent debts are, by definition, unlikely to be able to pay to retain counsel to protect their rights on an individual basis.

The special efficacy of the consumer class action has been noted by the courts and is applicable to this case:

> **A class action permits a large group of claimants to have their claims adjudicated in a single lawsuit. This is particularly important where, as here, a large number of small and medium sized claimants may be involved. In light of the awesome costs of discovery and trial, many of them would not be able to secure relief if class certification were denied....**

*In re Folding Carton Antitrust Litigation*, 75 F.R.D. 727, 732 (N.D. Ill. 1977) (citations omitted).

Another court noted:

> **Given the relatively small amount recoverable by each potential litigant, it is unlikely that, absent the class action mechanism, any one individual would pursue his claim, or even be able to retain an attorney willing to bring the action. As Professors Wright, Miller and Kane have discussed, in analyzing consumer protection class actions such as the instant one, 'typically the individual claims are for small amounts, which means that the injured parties would not be able to bear the significant litigation expenses involved in suing a large corporation on an individual basis. These financial barriers may be overcome by permitting the suit to be brought by one or more consumers on behalf of others who are similarly situated.' 7B Wright et al., §1778, at 59; see *e.g.*, *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) ('Class actions . . . may permit the plaintiff to pool claims which would be uneconomical to litigate individually.') The public interest in seeing that the rights of consumers are vindicated favors the disposition of the instant claims in a class action form.**

*Lake v. First Nationwide Bank*, 156 F.R.D. 615, 628-629 (E.D. Pa 1994).

Class certification will provide an efficient and appropriate resolution of the controversy.

*Zanni*, 119 F.R.D. 32.

## II.    CONCLUSION

The proposed class meets the requirements of Rules 23(a) and (b)(3). Plaintiff respectfully requests that this Court certify this action as a class action.

Respectfully submitted,

/s/ Thomas E. Soule
Thomas E. Soule

11

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Thomas E. Soule
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, Suite 1800
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

RMB HOLDINGS, LLC,          )
           )
        Plaintiff,    )
           )
v.           )    No. 3:07-cv-406
           )    (SHIRLEY)
GOLDBERG & ASSOCIATES, LLC   )
           )
        Defendant.    )

## MEMORANDUM AND ORDER

This case is before the undersigned pursuant to 28 U.S.C. § 636(c), Rule 73(b) of the Federal

Rules of Civil Procedure, and the consent of the parties, for all further proceedings, including entry

of judgment [Doc. 7]. On May 13, 2008, the parties appeared before the Court for a hearing on the

following motions filed by Plaintiff: Motion for Summary Judgment [Doc. 10]; Motion to Compel

or to Extend Deadline to File Motion to Compel [Doc. 13]; Motion to Extend Discovery Deadline

for Purposes of Depositions Pending Motion for Summary Judgment [Doc. 14]; and Motion to

Extend Deadline to File Plaintiff's Final Witness List [Doc. 16]. Attorney Thomas Dickenson

appeared on behalf of Plaintiff. Attorney Tamara Klopenstein appeared on behalf of Defendant.

At the hearing, Mr. Dickenson advised the Court it was his client's position that oral argument

would only be necessary on the pending motion for summary judgment, and with the Court's

permission, he would only proceed on that motion. Mr. Dickenson further advised the Court that

it is Plaintiff's position that the other pending discovery related motions are intertwined with the

summary judgment motion and based on the Court's ruling, those motions will either become moot

or can be decided based on the pleadings. Defendant had no objection to Plaintiff's contention.

Accordingly, the Court proceeded with oral argument on Plaintiff's Motion for Summary Judgment.



I.    **Relevant Facts**

As the Court is required to do in reviewing a motion for summary judgment, all facts will be viewed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Plaintiff RMB Holdings ("RMB") is a Georgia limited liability company with its principle place of business located in Knoxville, Tennessee [Doc. 1 at ¶ 1]. Defendant Goldberg and Associates ("Goldberg") is a Florida limited liability company, with its principle place of business located in Boca Raton, Florida [Id. at ¶ 2]. Both RMB and Goldberg are in the business of buying, selling, and/or collecting on consumer debt [Doc. 11 at 6]. On or about August 22, 2007, RMB and Goldberg entered into an Account Purchase and Sale Agreement ("agreement"), in which Goldberg agreed to sell approximately 6,521 accounts ("accounts") to RMB for a purchase price in the amount of $1,662,596 [Id. at ¶ 5]. Goldberg's representative, Steven Goldberg, participated in the negotiations with RMB, had authority to enter into the agreement on behalf of Goldberg, and signed the agreement on behalf of Goldberg [Doc. 10-2 at ¶¶ 1,2; Doc. 17 at 4]. Pursuant to Paragraph 4.B of the agreement, Goldberg incorrectly represented to RMB that it would be the "owner of all right, title and interest in and to all of the Accounts," by the closing date as defined in the agreement and would provide RMB "full and complete chain of title for the portfolio" [Id. at ¶ 6; Doc. 17 at 1]. Goldberg, pursuant to the agreement, also executed a Bill of Sale and Assignment of Non-Performing Loans and Contracts Rights ("Bill of Sale"), and conveyed the accounts to RMB [Id. at ¶ 7]. Goldberg's representative, Steven Goldberg, had authority to enter into the Bill of Sale on behalf of Goldberg and signed the Bill of Sale on behalf of Goldberg [Doc. 10-2 at ¶ 4]. Based upon

Goldberg's representations that it owned and had title to the accounts, RMB entered into the transaction to purchase the accounts from Goldberg [Doc. 11 at 7].

Prior to executing the agreement with RMB, Goldberg agreed to purchase accounts from Hudson and Keyse, LLC ("Hudson & Keyse") [Doc. 17 at 4; Doc. 18 at ¶ 8]. Some , if not all, of the accounts that were to be purchased by Goldberg from Hudson & Keyse were later to be sold to RMB pursuant to their agreement with Goldberg [Doc. 18 at ¶ 8]. Goldberg never paid Hudson & Keyse for the accounts it planned to purchase [Doc. 10-2 at ¶ 7]. The agreement between Goldberg and Hudson & Keyse was never fully executed because of a "financial issue" suffered by Hudson & Keyse [Doc. 17 at 4; Doc. 18 at ¶ 8].

RMB paid Goldberg the agreed upon purchase price of $1,662,596 and paid a broker fee of $30,941.24 [Doc. 11 at 8]. Goldberg never delivered title or ownership of the accounts to RMB [Doc. 10-3 at ¶ 10]. When RMB began making attempts to collects the accounts it purchased from Goldberg, it was unable to do so [Doc. 1 at ¶ 9]. Goldberg has failed to refund or repay any of the $1,662,596 to RMB [Doc. 10-2 at ¶ 9]. RMB also lost $43,076.82 in profits from a resale agreement and lost a $8,615.36 broker fee in connection with the resale agreement [Doc. 10-3 at ¶ ¶ 14, 15]. RMB further had to pay $ 3,941.00 in letter expenses (postage and related expenses to collect accounts prior to discovering that RMB never obtained title to the accounts) [Doc. 10-3 at ¶ 16].

## II.    Procedural Posture

RMB moved for summary judgment against Goldberg on April 11, 2008 [Doc. 10]. On May 1, 2008, Goldberg responded [Doc. 17] in opposition to RMB's motion. On May 9, 2008, RMB

filed their reply [Doc. 20]. The parties argued their pleadings on May 13, 2008. Accordingly, this matter is now ripe for adjudication.

A. ***RMB's Motion for Summary Judgment***

RMB moves for summary judgment as to the following claims: (1) Goldberg's breach of contract and warranty of title; (2) Goldberg's negligent misrepresentation that it was the holder and owner of the accounts that were the subject of the agreement; (3) intentional misrepresentation that it was the holder and owner of the accounts that were the subject of the agreement; and (4) violation of the Tennessee Consumer Protection Act, TENN. CODE ANN. § 47-18-104 since Goldberg falsely represented that it owned or had title to the accounts, which mislead and deceived RMB as to a material fact in the transaction completed by the parties [Doc. 11]. RMB requests rescission of the contract, return of the total purchase price of $1,662,596, lost broker fee of $30,941.24, lost profits of $43,076.82, lost broker fee from resale agreement of $8,615.36, and letter expenses of $3,941.00, totaling $1,833,571.88 plus pre- and post-judgment interest, which accrues at the rate of $326.44 per day [Doc. 10-3 at 2-3]. RMB also claims Goldberg's violation of the Tennessee Consumer Protection Act ("TCPA") entitles it to an award of attorney's fees and costs. RMB also requests punitive damages under its common law intentional misrepresentation claim and statutory treble damages under the TCPA in the amount of $5,500,715.64.[1]

---

[1]RMB recognizes it is entitled to pursue punitive damages under its common law intentional misrepresentation claim and treble damages pursuant to the TCPA, but cannot recover both punitive and treble damages if this Court finds Goldberg liable under both claims. [See Doc. 11 at 20-21]. RMB further advises the Court that it is not in a position to offer proof on punitive damages at this time since discovery has not been completed, but it requests this Court enter an Order reflecting entitlement to punitive damages [Id. at 21].

4

As a threshold matter, RMB submits this Court should apply the substantive law of Tennessee in adjudicating this matter [Doc. 11 at 2]. The Court finds RMB is correct that a "Federal District Court sitting in diversity is obliged to apply the substantive law of the forum in which it sits" and when jurisdiction is based on diversity, the court "must apply the choice of law rules of the forum state." [Doc. 11 at 2] (citations omitted). Accordingly, it is correctly submitted that Tennessee's choice of law principles apply. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941); Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938).

As to RMB's breach of contract and breach of warranty of title claims, under Tennessee law, the rule of *lex loci contractus* applies, which "provides that a contract is presumed to be governed by the law of the jurisdiction in which it was executed absent a contrary intent." Messer Griesheim Industries, Inc. v. Cryotech of Kingsport, Inc., 131 S.W.3d 457, 474-75 (Tenn. Ct. App. 2003) (citing Ohio Cas. Ins. Co. v. Travelers Indem. Co., 493 S.W.2d 465, 467 (Tenn. 1973)). "If the parties manifest an intent to instead apply the laws of another jurisdiction, then that intent will be honored provided certain requirements are met" Id. In this case, the agreement entered into between RMB and Goldberg provides that "[t]his Agreement is made pursuant to, and shall be construed under the laws of Florida." [Doc. 1, Ex. A at 14]. Accordingly, Florida law governs RMB's claims arising from the agreement.

As to RMB's negligent misrepresentation and intentional misrepresentation claims, if there is "no real conflict between or among the relevant laws of the various states", then a choice of law analysis is "unnecessary". Gov't Employees Ins. Co. v. Bloodworth, 2007 WL 1966022, *29 (Tenn. Ct. App. June 29, 2007). "In fact, a conflict between the laws of the states at issue is a necessary predicate to deciding which state's (or states') laws should govern the various issues presented in

5

the case." Id. (citing Hataway v. McKinley, 830 S.W.2d 53, 55 (Tenn. 1992)). "A court need not make a choice of law if, in fact, there is no real difference or conflict between the relevant laws of the states involved" and may apply the law of the forum Id. RMB contends, and this Court agrees, that Tennessee and Florida law is substantially the same in regard to these two tort claims. Accordingly, this Court will apply Tennessee law in adjudicating the negligent misrepresentation and intentional misrepresentation claims.

**B.    *Goldberg's Opposition to RMB's Motion for Summary Judgment***

Goldberg replied by filing a Memorandum in Opposition to RMB's Motion for Summary Judgment [Doc. 17]. Goldberg also filed an affidavit signed by Steven Goldberg in support of its opposition to RMB's motion [Doc. 18].

As to RMB's intentional misrepresentation claim, Goldberg contends RMB does not list a cause of action for intentional misrepresentation, but instead, lists a cause of action for fraud, and therefore, treats RMB's intentional misrepresentation claim as one for fraud. Goldberg does not deny the fact that it "incorrectly represented to Plaintiff that Defendant had ownership and title to the accounts that were to be the subject of the transaction" nor does it "dispute the fact that the false representation was material" [Doc. 17 at 1]. Goldberg, however, argues there remains a genuine issue of material fact: whether it "knowingly, intentionally, or with reckless disregard for the truth, misrepresented [its] ownership or title to the accounts in question." [Id.].

As to RMB's claim for treble damages under the TCPA, Goldberg contends RMB again failed to satisfy its burden of proof in showing that it willfully and knowingly violated the TCPA. Goldberg contends it did not intentionally or knowingly misrepresent facts to RMB, but believed it had ownership and title to the accounts in question.

6

**C.**    ***RMB's Response to Goldberg's Opposition to its Motion for Summary Judgment***

In their reply [Doc. 20], RMB first argues it is entitled to summary judgment on all unopposed claims and compensatory damages. RMB contends that since Goldberg only opposes liability under its claims for intentional misrepresentation[2] and treble damages for a knowing and willful violation of the TCPA, it is entitled to summary judgment on its claims of breach of contract and warranty of title, negligent misrepresentation, and a violation of the TCPA as well as for the amount of compensatory damages set forth in the Affidavit of Steven Harb [Doc. 10-3]. Therefore, RMB submits the following issues are the only ones before the Court for consideration: (1) whether Goldberg made the false representations of title and ownership knowing they were false, without belief in their truth, or recklessly with regard to their truth; (2) whether RMB knowingly or willfully violated the TCPA, entitling RMB to treble damages; (3) whether RMB is entitled to punitive damages pursuant to its common law intentional misrepresentation claim, and if so, what amount; and (4) whether RMB is entitled to attorneys fees and costs pursuant to Goldberg's violation of the TCPA, and if so, what amount.

RMB first argues the Court should not consider the affidavit submitted by Steven Goldberg in support of Goldberg's opposition to summary judgment by way of estoppel or waiver since through its conduct, Goldberg has been less than forthright with RMB and the Court. RMB contends Mr. Goldberg's affidavit should not be considered by this Court since Goldberg failed to

---

[2]RMB responds to Goldberg's contention that it failed to list a cause of action for intentional misrepresentation, and instead listed a cause of action for fraud by advising the Court that under Tennessee law, fraud and intentional misrepresentation are "two interchangeable labels for the same conduct" [Doc. 20 at 1 n.1]. The Court has reviewed the cases cited by RMB and agrees with its assessment. Accordingly, the Court will refer to RMB's claim as one alleging intentional misrepresentation.

timely respond to their first request for interrogatories, as required by Fed.R.Civ.P. 33[3] and failed

to provide any documents in response to their February 29, 2008 request for production of

documents, in which RMB sought Goldberg's tax returns for the last three years and the minutes of

Goldberg's meetings of managers, members, and/or board. RMB contends Goldberg's failure to

respond to both of their discovery requests "are a continuing example of gamesmanship and delay

tactics" which have prevented meaningful discovery and caused it to file various motions to compel

with the Court [Doc. 20 at 3]. RMB also submits that Goldberg has further contributed to the delay

of this matter by unequivocally denying RMB's allegations in answering their complaint, but then

admitting the same allegations in RMB's first request for admissions.

RMB further contends the affidavit submitted by Goldberg is self-serving and does not create

a genuine issue of material fact since the affidavit is devoid of any objective facts that could support

Mr. Goldberg's assertion that he believed he owned the accounts which were the subject of the

agreement between RMB and Goldberg. RMB argues Goldberg failed to produce any documents

which would support Mr. Goldberg's belief as to ownership, and his assertion of belief is not enough

to deny RMB's motion for summary judgment.

Finally, RMB argues Mr. Goldberg's affidavit was presented in bad faith and for the

purposes of delay, which entitles RMB to an award of reasonable expenses and/or attorney's fees

incurred in responding to Goldberg's opposition. Citing Fed.R.Civ.P. 56(g) and a Tennessee Court

---

[3]RMB advises the Court that Goldberg failed to respond to their interrogatories for over two months, and when it finally did, the responses were produced only three business days before the motion hearing date.

of Appeals decision considering the definition of the term "bad faith"[4], RMB contends the unsupported assertions contained in the affidavit "constitutes a design and plan to mislead Plaintiff and the Court," and "is in furtherance of Defendant's course of conduct in delaying a final resolution of the underlying dispute" [Doc. 20 at 9-10].

### D.    *Arguments Presented at Hearing*

At the hearing, the parties largely reiterated the arguments submitted in their pleadings.  A brief summary of their arguments follows.

As a threshold matter, the Court asked defense counsel whether their client, in failing to respond to the following claims: breach of contract and warranty of title, negligent misrepresentation, and liability under the TCPA, was conceding that awarding summary judgment in favor of RMB as to those claims would be proper.  Defense counsel agreed Goldberg was not contesting liability under those claims and conceded the TCPA applies to this matter, but is contesting RMB's allegation that it is entitled to treble damages under the statute.

RMB argues the main issue left for adjudication is whether Mr. Goldberg made representations in regard to the accounts, which were the subject of the agreement, knowing those representations were false, or without belief in its truth, or with reckless disregard to its truth, thus, giving rise to liability for an intentional misrepresentation, and whether Goldberg's misrepresentations to RMB constituted a knowing violation of the TCPA, entitling it to an award

---

[4]RMB acknowledges that the cited Tennessee Court of Appeals decision, Banks v. Sanford, No. W2006-00703-COA-R3-CV, at *3 (Tenn. Ct. App. May 3, 2007) discusses Rule 56(g) of the Tennessee Rules of Civil Procedure and furthermore, is not binding authority on this Court.  However, RMB cites to the case for the purpose of providing the Court with a definition of "bad faith" and further highlights that the language of Rule 56(g) under the Tennessee Rules of Civil Procedure is the same as Rule 56(g) under the Federal Rules.

of treble damages. Under the TCPA, the term "knowing" or "knowingly" is defined as "actual awareness of the falsity of deception, but actual awareness may be inferred where objective manifestations indicate that a reasonable person would have known or would have reason to know of the falsity or deception" TENN. CODE ANN. § 103(6). RMB contends although there is a difference in the two standards outlined in the causes of action, there is no distinction.

RMB repeated its position with respect to Steven Goldberg's affidavit, and requested the Court not consider it since Goldberg failed to respond to timely discovery requests. In the alternative, RMB argued, if the Court was inclined to consider Mr. Goldberg's affidavit, the affidavit still does not create a genuine issue of material fact since it is insufficient and self-serving. RMB contends Mr. Goldberg's alleged belief as to ownership of the accounts is not supported anywhere else in the record, especially in light of his response to their interrogatory, which states Mr. Goldberg is the only person who works for or on behalf of Goldberg, thus he should have known he did not own or have title to the accounts in question [Doc. 20-2 at ¶ 1]. RMB further argues that Goldberg's failure to produce any documents gives rise to the permissive inference that "a party's failure to produce a document capable of shedding light on a material contested issue can give rise to a permissive inference that the missing document would have been unfavorable to the party possessing it." Richardson v. Miller, 44 S.W.3d 1, 27-28 (Tenn. Ct. App. 2000) (citing Tennessee law of Evidence § 401.9, at 99). RMB contends the evidence in the record supports their claim of intentional misrepresentation and their request for treble damages since Goldberg willfully disregarded the truth in their representations to RMB. RMB also repeated its request to find Mr. Goldberg's affidavit was filed in bad faith.

10

As an initial matter, counsel for Goldberg argues that Steven Goldberg's affidavit was not filed in bad faith. Goldberg maintains its lack of knowledge in that it did not own the accounts that were the subject of the agreement between RMB and Goldberg and provided a sworn statement affirming that defense. Goldberg advised the Court that an individual by the name of Anthony Feldman was involved in the financial aspect of the transaction between Goldberg and Hudson & Keyse. Upon questioning by the Court, Goldberg's counsel stated Mr. Goldberg's affidavit is based upon state of mind at the time he executed the agreement with RMB, but did not provide the Court with any information supporting that belief, such as a document transferring ownership from Hudson & Keyse or a contract between the two parties reflecting a purchase of the accounts to be executed at a later date, but before the closing date agreed upon by RMB and Goldberg. Goldberg further informed the Court that it has never paid Hudson & Keyse to gain ownership of the accounts nor has it returned any of the money owed RMB for breaching its contract.

Prior to the conclusion of the hearing, counsel for RMB alleged Mr. Goldberg lied in his interrogatory based on defense counsel's statement at the hearing that an individual named Anthony Feldman was involved in the financial aspect of the deal between Goldberg and Hudson & Keyse. RMB argues this discrepancy between defense counsel's statement and the response given during discovery shows why the Court should not use Mr. Goldberg's affidavit as an indicator of truthfulness. RMB requested the Court review Doc. 20-2, specifically questions one and two. Question one asks for the name and information of any person "who performed any work, or have any knowledge relating to the sale of accounts, promissory notes, and/or evidence of indebtedness between Goldberg and RMB" [Doc. 20-2 at ¶ 1]. Mr. Goldberg's response states he is "the only person who works for or on behalf of the LLC" [Id.]. Question two asks for the name and

information of any person, including independent contractors, "who performed any work, or have any knowledge relating to the sale of accounts, promissory notes, and/or evidence of indebtedness between Goldberg and Hudson & Keyse, LLC" [Doc. 20-2 at ¶ 2]. Mr. Goldberg's response again states he is "the only person who works for or on behalf of the LLC" [Id.].


**III.    Standard of Review**

Under Fed. R. Civ. P. 56(c), summary judgment is proper if "the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." The burden of establishing there is no genuine issue of material fact lies upon the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 330 n.2 (1986). The court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Burchett v. Kiefer, 310 F.3d 937, 942 (6th Cir. 2002). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable jury could find in its favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. Id.

Once the moving party presents evidence sufficient to carry its burden under Rule 56, the non-moving party may not rest upon its pleadings, but must affirmatively set forth, by affidavits or otherwise, "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). An entry of summary judgment is mandated if, "after adequate time for discovery and upon motion, [the

non-moving party] fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex</u>, 477 U.S. at 332. Accordingly, the judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper jury question, and not to weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. <u>Id.</u> at 249. Thus, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." <u>Id.</u> at 250.

## IV.    Analysis

RMB moves for summary judgment as to the following claims: (1) Goldberg's breach of contract and warranty of title; (2) Goldberg's negligent misrepresentation that it was the holder and owner of the accounts that were the subject of the agreement; (3) intentional misrepresentation that it was the holder and owner of the accounts that were the subject of the agreement; and (4) violation of the Tennessee Consumer Protection Act, TENN CODE ANN. § 47-18-104, since Goldberg falsely represented that it owned or had title to the accounts, which mislead and deceived RMB as to a material fact in the transaction completed by the parties [Doc. 11]. Each of these issues will be discussed in turn.

### A.    *Breach of Contract and Warranty of Title*

RMB asserts a claim of breach of contract and warranty of title and argues it is entitled to summary judgment on this claim because Goldberg failed to perform its obligations pursuant to the

agreement and breached the warranties and representations made in both the agreement and bill of sale [Doc. 9]. Goldberg concedes it breached its contract with RMB as well as the warranties and representations made in the agreement and bill of sale. Accordingly, RMB's Motion for Summary Judgment on its claims for breach of contract and warranty of title is **GRANTED**.

### B.    *Negligent Misrepresentation*

RMB asserts a claim of negligent misrepresentation, arguing Goldberg: (1) acted in the course of its business, profession, or employment, or in a transaction in which it has a pecuniary interest; (2) supplied faulty information meant to guide others in their business transactions; (3) failed to exercise reasonable care in obtaining or communicating the information; and (4) RMB justifiably relied on the information given to them by Goldberg [Doc. 11 at 11 citing John Martin Co. v. Morse/Diesel, Inc., 819 S.W.2d 428, 431 (Tenn. 1991) for the elements of negligent misrepresentation)]. Goldberg concedes it was acting in the course of its business when it represented it was the owner and holder of the accounts that were the subject of the agreement and that it had a pecuniary interest in the transaction. Goldberg further concedes that its representation was false because it was never the owner or holder of the accounts, that it failed to exercise reasonable case in obtaining information, and that RMB justifiably relied on the false representations. Accordingly, RMB's Motion for Summary Judgment on its claim for negligent misrepresentation is **GRANTED**.

### C.    *Intentional Misrepresentation*

With respect to intentional misrepresentation, RMB alleges Goldberg knew it did not have title or ownership to the accounts, or at least made the false representations in reckless disregard to the truth. To prove a claim for intentional misrepresentation, a plaintiff must show that (1)

14

defendant made a representation of fact; (2) the representation was false; (3) the representation was made either knowingly, recklessly, or without belief in its truth; (4) the plaintiff acted reasonably in relying on the representation; and (5) the plaintiff suffered damages as a result of the representation. City State Bank v. Dean Witter Reynolds, Inc., 948 S.W.2d 729, 738 (Tenn. Ct. App. 1996); see also Axline v. Kutner, 863 S.W.2d 421, 423 (Tenn. Ct. App. 1993). For the purposes of considering RMB's claim, the terms "intentional misrepresentation," "fraudulent misrepresentation," and "fraud" are synonymous. See Concrete Spaces, Inc. v. Sender, 2 S.W.3d 901, 905 n. 1 (Tenn. 1999).

To defeat RMB's motion for summary judgment, Goldberg is required to either affirmatively negate one of the essential elements set out above or conclusively establish an affirmative defense. Blair v. West Town Mall, 130 S.W.3d 761, 768 (Tenn. 2004). In this case, Goldberg does not dispute it "represented to [RMB] that [it] owned and had title to the accounts" nor does Goldberg dispute the representation made during negotiations was false [Doc. 17 at 5]. Goldberg also admits that RMB acted reasonably in relying on its representation and that RMB suffered damages as a result of its misrepresentation [Id.]. Goldberg, though, contends RMB has not provided any evidence that it represented ownership of the accounts at issue with knowledge that it did not actually own the accounts. In support of its contention, Goldberg submitted an affidavit of Steven Goldberg, its managing shareholder, which states "[a]t the time of execution, and all times leading up to the execution of the Agreement and Bill of Sale, [Goldberg] believed that it had ownership and clear title to the Accounts" and that it was not his "intent to misrepresent my ownership of the Accounts" [Doc. 18 at 2]. This Court does not find Goldberg's contention or affidavit in support thereof well taken.

15

The element at issue in this case requires a showing that the misrepresentation was intentional, was made without a belief it was accurate, or was made with reckless disregard for the truth. See Metro. Gov't of Nashville and Davidson County v. McKinney, 852 S.W.2d 233, 237 (Tenn. Ct. App. Sept. 4, 1992). In response to RMB's allegations that it either knew it did not own the accounts in question or it made the representations with reckless disregard to the truth, Goldberg has not presented any "significant probative evidence" demonstrating what would have given it reason to think it was the owner of the accounts that were the subject of the agreement between it and RMB. Moore v. Phillip Morris Co., Inc., 8 F.3d 335, 339-40 (6th Cir. 1993) (internal citations omitted). While Goldberg may use "affidavits or ... depositions, answers to interrogatories, and admissions on file" to "designate specific facts showing that there is a genuine issue for trial," the Court finds in this matter, all Goldberg has shown, at best, is "that there is some metaphysical doubt as to the material facts." Id. Goldberg has failed to point to evidence in the record which "presents a sufficient disagreement to require submission to a jury" to resolve the merits of this claim. Id.

All Goldberg provides in support of its opposition is one person's conclusory statement that he believed Goldberg had ownership of and title to the accounts. Id. While the affidavit is prepared by "the only person who works for or on behalf of [Goldberg]" [Doc. 20-2 at ¶ 1], who is "competent and authorized to testify to the matters stated herein" [Doc. 18 at ¶ 1], the Court finds Steven Goldberg's statement is "rife with self-serving conclusions". Devine v. Jefferson County, Kentucky, 186 F.Supp.2d 742, 743 (6th Cir. 2001). The affidavit contains an abundance of generalizations, but few, if any, facts for a jury to consider. It is well established that affidavits containing "nothing more than ... conclusory allegations and subjective beliefs ... are wholly insufficient evidence" to establish a claim "as a matter of law." Mitchell v. Toledo Hosp., 964 F.2d

16

577, 585 (6th Cir. 1992); see also Slowiak v. Land O'Lakes, Inc., 987 F.2d 1293, 1295 (7th Cir. 1999) ("Self-serving affidavits without factual support in the record will not defeat a motion for summary judgment.") (citing Kornacki v. Norton Performance Plastics, 956 F.2d 129 (7th Cir. 1992)).[5]  The affidavit fails to provide any factual or documentary support for Goldberg's assertion, such as contract between Goldberg and Hudson & Keyse evidencing their independent agreement to buy and sell the accounts which would subsequently be resold by Goldberg to RMB, or any evidence, that supports Steven Goldberg's contention that Goldberg believed Goldberg owned or had title to the accounts.  In Tennessee, "a party's failure to produce a document capable to shedding light on a material contested issue can give rise to a permissive inference that the missing document would have been unfavorable to the party possessing it." Richardson v. Miller, 44 S.W..3d 1, 27-28 (Tenn. Ct. App. 2000) (citing Tennessee Law of Evidence § 401.9, at 99) (recognizing "that sometimes the absence of something expected can be significant").  The Court finds Goldberg's failure to produce any additional information in support its belief that it owned the accounts in question is significant and contributes to the finding that the affidavit is self-serving and thus, insufficient to defeat RMB's motion for summary judgment.  Furthermore, Steven Goldberg fails to provide any specifics in his affidavit as to the transaction between Goldberg and Hudson & Keyse, which would support his belief that there was "a deal in place ... to purchase the Accounts" [Doc. 18 at ¶ 8].  In light of the lack of information provided, there is simply not enough evidence in the record to create a genuine issue of material fact as to the knowledge element of RMB's intentional misrepresentation claim.

_____

[5]This circumstance is not unlike the prohibited practice where a party attempts to create a factual issue to defeat summary judgment by submitting an affidavit that contradicts a prior statement in a deposition. See Jones v. Gen. Motors Corp., 939 F.2d 380, 385 (6th Cir. 1991)

Nor does Steven Goldberg make any effort in his affidavit to explain why Goldberg thought it owned the accounts in question if it never paid Hudson & Keyse pursuant to their agreement [Doc. 10-2 at ¶ 7-8]. Steven Goldberg simply states, with no further elaboration or explanation that "the transaction was never executed because of a financial issue with Hudson & Keyse, ... [which] I have no personal knowledge as to the specifics of Hudson & Keyse's, LLC, financial issue." [Doc. 18 at ¶ 8]. The Court finds it quite disturbing that Goldberg claims Steven Goldberg is "the only person" who would have knowledge about or who worked on the transaction with Hudson & Keyse [Doc. 20-2 at ¶ 2], yet according to his affidavit, he had no knowledge of why the transaction was never executed. As stated at the hearing, the Court is also quite troubled by Goldberg's claim that it thought or "believed" it owned and had title to the accounts, but yet admitted, in discovery and in open court, it never paid Hudson & Keyse for those accounts, had no document transferring ownership, and had nothing to allegedly transfer. Other than reiterating this belief, Goldberg has offered <u>no</u> basis, let along a good faith basis, for such a belief or what the belief was based on [See Doc. 10-2 at ¶ 7]. Again, Goldberg failed to provide any evidence in support of its claim at the hearing that based on past transactions, it believed it owned the accounts without paying Hudson & Keyse for them. Nowhere in Steven Goldberg's affidavit does Goldberg contend that the contract principles of course of dealing or usage of trade apply to support its contention that it believed it had ownership of the accounts even though it had not yet paid for them, nor was it established at the hearing that the contract principles applied.

For all the reasons outlined above and after careful examination of the all the evidence before the Court, the Court concludes no genuine issue of material fact exists as to whether Goldberg intentionally misrepresented to RMB that it was the owner of and had title to the accounts that were

18

the subject of agreement entered between the two parties on August 22, 2007. The Court concludes Goldberg's misrepresentation in regard to its ownership of the accounts was intentional, was made without a belief it was accurate, or was made with reckless disregard for the truth. Accordingly, RMB's Motion for Summary Judgment as to its intentional misrepresentation claim is **GRANTED**.

### D.    *Tennessee Consumer Protection Act*

Finally, RMB asserts that Goldberg's actions constituted a breach of the TCPA. The TCPA provides for a cause of action when an individual suffers "an ascertainable loss of money or property ... as a result of the use or employment by another person of an unfair or deceptive act or practice ..." TENN. CODE ANN. § 47-19-109(a)(1). RMB alleges that Goldberg's actions, specifically falsely representing that it owned or had title to the accounts, constitute a violation of the TCPA.[6] Goldberg does not contest its liability under the TCPA; it only contests RMB's claim for treble damages, which is discussed below. Accordingly, RMB's Motion for Summary Judgment as to its TCPA claim is **GRANTED**.

### E.    *Damages*

RMB seeks compensatory damages in the amount of $1,833,517.88 plus pre- and post-judgment interest.[7] It further seeks attorney's fees and costs under the TCPA, contending if the Court determines it is entitled to an award of attorney's fees, the exact amount can be determined

---

[6]The TCPA provides a laundry list of specific activities that constitute unfair or deceptive acts or practices. See TENN. CODE ANN. § 47-18-104(b). RMB does not rely on any of those specific provisions, but rather on the statute's catch all provision, which prohibits "any other act or practice which is deceptive to the consumer or to any other person." TENN. CODE ANN. § 47-18-104(b)(27).

[7]RMB contends the amount of interest through April 11, 2008 is $84,398.37 and will continue to accrue thereafter at the rate of $326.44 per day [Doc. 10-3 at 4].

by the Court at a later date upon the filing of a supplemental affidavit [Doc. 11 at 20]. RMB also seeks punitive damages under its common law intentional misrepresentation claim and statutory treble damages pursuant to the TCPA. In regard to its claim for punitive damages, RMB claims it is not in the position to offer proof on punitive damages since the discovery deadline has not passed and discovery is incomplete, thus it is seeking an order reflecting entitlement to punitive damages, but is not seeking a ruling on the amount of punitive damages.[8] In regard to its claim for treble damages under the TCPA, RMB requests damages in the amount of $5,500,715.64.

"It is axiomatic that a plaintiff may not recover double redress for a single wrong." Miller v. United Automax, 166 S.W.3d 692, 697 (Tenn. 2005); see also Concrete Spaces, Inc. v. Sender, 2 S.W.3d 901, 906 (Tenn. 1999); Shahrdar v. Global Housing Inc., 983 S.W.2d 230, 238 (Tenn. Ct. App. 1998) ("Whether the theory of recovery is breach of contract, intentional misrepresentation, or promissory fraud, if the damages claimed under each theory overlap, the Plaintiff is only entitled to one recovery."). If a defendant has been liable under more than one theory of recovery, no inequity results from allowing the plaintiff to choose one of the claims upon which to realize its maximum recovery of enhanced damages. Concrete Spaces, 2 S.W.3d at 909. Therefore, in a case such as this one, where Goldberg was found liable under the theory of intentional misrepresentation and for violations of the TCPA and if the Court finds it is entitled to damages under both claims, RMB must elect either punitive damages under the common law claim or treble damages under the TCPA.

---

[8]RMB filed its Motion for Summary Judgment on April 11, 2008. Trial in this matter is set for June 11, 2008. Per this Court's Scheduling Order [Doc. 8], all discovery shall be completed thirty days before trial.

1.    **Intentional Misrepresentation Claim**

In Tennessee, it is clear that punitive damages are "restrict[ed] ... to cases involving only the most egregious of wrongs." <u>Hodges v. S.C. Toof & Co.</u>, 833 S.W.2d 896, 900-01 (Tenn. 1992). A court may "award punitive damages only if it finds a defendant has acted either (1) intentionally, (2) fraudulently, (3) maliciously, or (4) recklessly." <u>Id.</u>

> A person acts intentionally when it is the person's conscious objective desire to engage in the conduct or cause the result. ... A person acts fraudulently when (1) the person intentionally misrepresents an existing material fact or produces a false impression, in order to mislead another or to obtain an undue advantage, and (2) another is injured because of reasonable reliance upon that representation. ... A person acts maliciously when the person is motivated by ill will, hatred, or personal spite. A person acts recklessly when the person is aware of, but consciously disregards, a substantial and unjustifiable risk of such a nature that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances.

<u>Id.</u> (internal citations omitted).

Punitive damages may only be awarded where the plaintiff has proven that the defendant acted intentionally, fraudulently, maliciously, or recklessly by clear and convincing evidence. <u>Id.</u>

In this matter, the Court finds RMB established, by clear and convincing evidence, that Goldberg made a material and intentional misrepresentation in regard to its ownership of the accounts that were the subject of the agreement between RMB and Goldberg. Goldberg represented it owned the accounts when it did not. Furthermore, its belief that it owned the accounts although it did not exchange any money with Hudson & Keyse to purchase those accounts was a "conscious disregard" of "a substantial risk" which was "a gross deviation from the standard of care that an ordinary person would exercise" in the same circumstances. <u>Hodges</u>, S.W.2d at 900-01. Accordingly, RMB is entitled to punitive damages. RMB is directed within thirty days of the

entering of this order to file with the Court information reflecting whether, in light of the Court's granting of treble damages, RMB prefers and seek punitive damages, and if so, the amount of punitive damages it seeks.

### 2.    TCPA Claim

Upon finding that the TCPA has been violated, a court is authorized the award the plaintiff reasonable attorney's fees, TENN. CODE ANN. § 47-18-109(e)(1), and further provides that a court "may award three (3) times the actual damages sustained" upon a finding that the defendant's violation of the TCPA was "willful or knowing". Id. at (a)(3). While "willful" is not defined in the TCPA, "knowing" is. It is defined as "... actual awareness of the falsity or deception, but actual awareness may be inferred where objective manifestations indicate that a reasonable person would have known or would have had reason to know of the falsity or deception." TENN. CODE ANN § 47-18-103(6).

The Court finds RMB is entitled to treble damages under the TCPA since Goldberg's misrepresentations as to its ownership of the accounts constituted a willful and knowing violation under the TCPA. As discussed above, it was not reasonable for Goldberg to believe it owned or had title to the accounts since it never paid Hudson & Keyse for the accounts [Doc. 10-2 at ¶ 7]. The Court finds a reasonable person would not represent ownership to a third party during contract negotiations if they neither owned nor had paid for the item they were purporting to sell. Further, Goldberg made such ownership statements with actual awareness of the falsity of the statement, and the deception it would create, and a reasonable person would have known of the falsity and deception of such misrepresentations. Accordingly, Goldberg had reason to know its representations

to RMB as to the ownership of the accounts in question were false, thus they committed a knowing violation of the TCPA and RMB is entitled to treble damages in the amount of $5,500,715.64.

Since the election of remedies doctrine serves only to prevent double redress for a single wrong, RMB may not recover both punitive damages and treble damages. However, if RMB chooses punitive damages under their common law intentional misrepresentation claim, it is still entitled to recover attorney's fees under the TCPA. See Miller v. United Automax, 166 S.W.3d 692, 697-98 (Tenn. 2005).[9]

## V.    Other Pending Motions

The Court agrees with RMB's counsel's contention that if the Court grants their motion for summary judgment, all other pending, discovery-related motions are moot. Accordingly, the Court **DENIES** the following motions as **MOOT**:

- Motion to Compel or to Extend Deadline to File Motion to Compel [Doc. 13];

- Motion to Extend Discovery Deadline for Purposes of Depositions Pending Motion for Summary Judgment [Doc. 14];

- Motion to Extend Deadline to File Plaintiff's Final Witness List [Doc. 16]

---

[9]The Court declines to address RMB's argument that Goldberg submitted Steven Goldberg's affidavit in bad faith. Since the Court finds RMB is entitled to attorney's fees under the TCPA, it is not necessary to reach a determination as to whether Goldberg submitted the affidavit in bad faith and in an attempt to further delay these proceedings.

23

## VI.    Conclusion

For the reasons listed above, RMB's Motion for Summary Judgment **[Doc. 10]** is **GRANTED IN PART** as to Goldberg's liability. This Court's ruling resolved all of RMB's claims as to Goldberg's liability on the law; however, the issue of damages, specifically RMB's election of remedies to wit: whether RMB seeks punitive damages for the common law intentional misrepresentation claim or treble damages under the TCPA, is still before the Court. The Court is presently unable to resolve this issue at this time without further clarification from RMB. Therefore, the bench trial scheduled for June 11, 2008 is **cancelled**, but the parties are nonetheless directed to appear before this Court on **June 11, 2008 at 9:00 a.m.** for a hearing with regard to RMB's damages. The Court finds further elucidation is needed from RMB before it can enter judgment accordingly. Therefore, at the June 11, 2008 hearing, RMB shall inform the Court of its preferred remedy, whether additional hearings are necessary, and submit information and affidavits in support of its request for attorney's fees. Goldberg shall be prepared to address these issues as well.

In light of this ruling, the following motions are **DENIED AS MOOT**: Motion to Compel or to Extend Deadline to File Motion to Compel **[Doc. 13]**; Motion to Extend Discovery Deadline for Purposes of Depositions Pending Motion for Summary Judgment **[Doc. 14]**; and Motion to Extend Deadline to File Plaintiff's Final Witness List **[Doc. 16]**.

**IT IS SO ORDERED.**

**ENTER:**

_s/ C. Clifford Shirley, Jr._
United States Magistrate Judge

24

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| LONNIE RANDOLPH,<br>individually and on behalf of the classes<br>defined herein,<br><br>        Plaintiff,<br><br>        v.<br><br>CROWN ASSET MANAGEMENT, LLC,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   1 : 08 CV 3212<br>      Judge Castillo<br>      Magistrate Judge Brown |

## DECLARATION OF DANIEL A. EDELMAN

Daniel A. Edelman declares under penalty of perjury, as provided for by 28 U.S.C. §1746, that the following statements are true:

1.    Edelman, Combs, Latturner & Goodwin, LLC, has 5 principals, Daniel A. Edelman, Cathleen M. Combs, James O. Latturner, Tara L. Goodwin, and Michelle R. Teggelaar and 9 associates.

2.    **Daniel A. Edelman** is a 1976 graduate of the University of Chicago Law School. From 1976 to 1981 he was an associate at the Chicago office of Kirkland & Ellis with heavy involvement in the defense of consumer class action litigation (such as the General Motors Engine Interchange cases). In 1981 he became an associate at Reuben & Proctor, a medium-sized firm formed by some former Kirkland & Ellis lawyers, and was made a partner there in 1982. From the end of 1985 he has been in private practice in downtown Chicago. Virtually all of his practice involves litigation on behalf of consumers, mostly through class actions. He is the co-author of Rosmarin & Edelman, Consumer Class Action Manual (2d-4th editions, National Consumer Law Center 1990, 1995 and 1999); author of Payday Loans: Big Interest Rates and Little Regulation, 11 Loy.Consumer L.Rptr. 174 (1999); author of Consumer Fraud and Insurance Claims, in Bad Faith and Extracontractual Damage Claims in Insurance Litigation, Chicago Bar Ass'n 1992; co-author of Chapter 8, "Fair Debt Collection Practices Act," Ohio Consumer Law (1995 ed.); co-author of Fair Debt Collection: The Need for Private Enforcement, 7 Loy.Consumer L.Rptr. 89 (1995); author of An Overview of The Fair Debt Collection Practices Act, in Financial Services Litigation, Practicing Law Institute (1999); co-author of Residential Mortgage Litigation, in Financial Services Litigation, Practicing Law Institute (1996); author of Automobile Leasing: Problems and Solutions, 7 Loy.Consumer L.Rptr. 14 (1994); author of Current Trends in Residential Mortgage Litigation, 12 Rev. of

1



Banking & Financial Services 71 (April 24, 1996); author of <u>Applicability of Illinois Consumer Fraud Act in Favor of Out-of-State Consumers</u>, 8 Loy.Consumer L.Rptr. 27 (1996); co-author of <u>Illinois Consumer Law</u> (Chicago Bar Ass'n 1996); co-author of D. Edelman and M. A. Weinberg, <u>Attorney Liability Under the Fair Debt Collection Practices Act</u> (Chicago Bar Ass'n 1996); author of <u>The Fair Debt Collection Practices Act: Recent Developments</u>, 8 Loy.Consumer L. Rptr. 303 (1996); author of Second Mortgage Frauds, Nat'l Consumer Rights Litigation Conference 67 (Oct. 19-20, 1992); and author of Compulsory Arbitration of Consumer Disputes, Nat'l Consumer Rights Litigation Conference 54, 67 (1994).   He is a member of the Illinois bar and admitted to practice in the following courts: United States Supreme Court, Seventh Circuit Court of Appeals, First Circuit Court of Appeals, Second Circuit Court of Appeals, Third Circuit Court of Appeals, Fifth Circuit Court of Appeals, Eighth Circuit Court of Appeals, Ninth Circuit Court of Appeals, Tenth Circuit Court of Appeals, Eleventh Circuit Court of Appeals, United States District Courts for the Northern and Southern Districts of Indiana, United States District Courts for the Northern, Central, and Southern Districts of Illinois, United States District Court for the District of Arizona, United States District Court for the District of Connecticut, and the Supreme Court of Illinois.   He is a member of the Northern District of Illinois trial bar.

       **3.**     **Cathleen M. Combs** is a 1976 graduate of Loyola University Law School.  She formerly supervised the Northwest office of the Legal Assistance Foundation of Chicago, where she was lead or co-counsel in class actions in the areas of unemployment compensation, prison law, social security law, and consumer law.  She joined what is now Edelman, Combs, Latturner & Goodwin, LLC in early 1991.  Decisions in which she was involved prior to joining the firm include:  <u>Johnson v. Heckler</u>, 607 F.Supp. 875 (N.D.Ill. 1984), and 100 F.R.D. 70 (N.D. Ill. 1983); <u>Sanders v. Shephard</u>, 185 Ill.App.3d 719, 541 N.E.2d 1150 (1st Dist. 1989); <u>Maller v. Cohen</u>, 176 Ill.App.3d 987, 531 N.E.2d 1029 (1st Dist. 1988); <u>Wright v. Department of Labor</u>, 166 Ill.App.3d 438, 519 N.E.2d 1054 (1st Dist. 1988); <u>Barron v. Ward</u>, 165 Ill.App.3d 653, 517 N.E.2d 591 (1st Dist. 1987); <u>City of Chicago v. Leviton</u>, 137 Ill.App.3d 126, 484 N.E.2d 438 (1st Dist. 1985); <u>Jude v. Morrissey</u>, 117 Ill.App.3d 782, 454 N.E.2d 24 (1st Dist. 1983).  She is a member of the Northern District of Illinois trial bar.

       **4.**     **James O. Latturner** is a 1962 graduate of the University of Chicago Law School.  Until 1969, he was an associate and then a partner at the Chicago law firm of Berchem, Schwanes & Thuma.  From 1969 to 1995 he was Deputy Director of the Legal Assistance Foundation of Chicago, where he specialized in consumer law, including acting as lead counsel in over 30 class actions.  His publications include Chapter 8 ("Defendants") in <u>Federal Practice Manual for Legal Services Attorneys</u> (M. Masinter, Ed., National Legal Aid and Defender Association 1989); <u>Governmental Tort Immunity in Illinois</u>, 55 Ill.B.J. 29 (1966); <u>Illinois Should Explicitly Adopt the Per Se Rule for Consumer Fraud Act Violations</u>, 2 Loy.Consumer L.Rep. 64 (1990), and <u>Illinois Consumer Law</u> (Chicago Bar Ass'n 1996).  He has taught in a nationwide series of 18 Federal Practice courses sponsored by the Legal Services Corporation, each lasting four days and designed for attorneys with federal litigation experience.  He has argued some 30 appeals, including two cases in the United States Supreme Court and two in the Illinois Supreme Court.  Mr. Latturner was involved in many of the significant decisions establishing the rights of

Illinois consumers. He is a member of the Northern District of Illinois trial bar.

5.      **Tara L. Goodwin** is a graduate of the University of Chicago (B.A., with general honors, 1988)and Illinois Institute of Technology, Chicago-Kent College of Law (J.D., with high honors,1991). She has been with the firm since her graduation and has participated in many of the cases described below. **Reported Cases.** Williams v. Chartwell Financial Services, LTD, 204 F.3d 748 (7th Cir. 2000); Hillenbrand v. Meyer Medical Group, 682 N.E.2d 101 (Ill.1st Dist. 1997), 720 N.E.2d 287 (Ill.1st Dist. 1999); Bessette v. Avco Fin. Servs., 230 F.3d 439 (1st Cir. 2000); Large v. Conseco Fin. Servicing Co., 292 F.3d 49 (1st Cir. 2002);; Carbajal v. Capital One, 219 F.R.D. 437 (N.D.Ill. 2004); Russo v. B&B Catering, 209 F.Supp.2d 857 (N.D.IL 2002); Garcia v. Village of Bensenville, 2002 U.S.Dist. LEXIS 3803 (N.D.Ill.); Romaker v. Crossland Mtg. Co., 1996 U.S.Dist. LEXIS 6490 (N.D.IL); Mount v. LaSalle Bank Lake View, 926 F.Supp. 759 (N.D.Ill 1996). She is a member of the Northern District of Illinois trial bar.

6.      **Michelle R. Teggelaar** is a graduate of the University of Illinois (B.A., 1993) and Chicago-Kent College of Law, Illinois Institute of Technology (J.D., with honors, 1997). **Reported Cases:** Johnson v. Revenue Management, Inc., 169 F.3d 1057 (7th Cir.1999); Hernandez v. Attention, LLC, 429 F. Supp. 2d 912 (N.D. Ill. 2005); Coelho v. Park Ridge Oldsmobile, Inc., 247 F. Supp. 2d 1004 (N.D. Ill. 2003); Dominguez v. Alliance Mtge., Co., 226 F. Supp. 2d 907 (N.D. Ill. 2002); Watson v. CBSK Financial Group, Inc., 197 F. Supp. 2d 1118 (N.D. Ill. 2002); Van Jackson v. Check 'N Go of Illinois, Inc. 123 F. Supp. 2d 1085 (N.D. Ill. 2000), Van Jackson v. Check 'N Go of Illinois, Inc., 123 F. Supp. 2d 1079, Van Jackson v. Check 'N Go of Illinois, Inc., 114 F. Supp. 2d 731 (N.D. Ill. 2000); Van Jackson v. Check 'N Go of Illinois, Inc., 193 F.R.D. 544 (N.D. Ill. 2000); Vines v. Sands, 188 F.R.D. 302 (N.D. Ill. 1999); Veillard v. Mednick, 24 F. Supp. 2d 863 (N.D. Ill.1998); Sledge v. Sands, 182 F.R.D. 255 (N.D. Ill. 1998), Vines v. Sands, 188 F.R.D. 203 (N.D. Ill. 1999); Livingston v. Fast Cash USA, Inc., 753 N.E.2d 572 (Ind. 2001); Binder v. Atlantic Credit and Finance, Inc., 2007 U.S. Dist. LEXIS 11483 (S.D. Ind. 2007); Carroll v. Butterfield Heath Care, Inc., 2003 WL 22462604 (N.D. Ill. 2003); Payton v. New Century Mtge., Inc., 2003 WL 22349118 (N.D. Ill. 2003); Seidat v. Allied Interstate, Inc., 2003 WL 2146825 (N.D. Ill. 2003) (Report and Recommendation); Michalowski v. Flagstar Bank, FSB, 2002 WL 112905 (N.D. Ill. 2002); Bigalke v. Creditrust Corp., 2001 WL 1098047 (N.D. Ill 2001) (Report and Recommendation); Donnelly v. Illini Cash Advance, 2000 WL 1161076 (N.D. Ill. 2000); Mitchem v. Paycheck Advance Express, 2000 WL 419992 (N.D. Ill 2000); Pinkett v. Moolah Loan Co., 1999 WL 1080596 (N.D. Ill. 1999); Farley v. Diversified Collection Serv., 1999 WL 965496 (N.D. Ill. 1999); Davis v. Commercial Check Control, 1999 WL 965496 (N.D. Ill. 1999); Sledge v. Sands, 1999 WL 261745 (N.D. Ill. 1999); Slater v. Credit Sciences, Inc., 1998 WL 341631 (N.D. Ill. 1998); Slater v. Credit Sciences, Inc., 1998 WL 299803 (N.D. Ill. 1998).

7.      **Associates**

a.      **Francis R. Greene** is a graduate of Johns Hopkins University

(B.A., with honors, May 1984), Rutgers University (Ph.D., October 1991), and Northwestern University Law School (J.D., 2000). **Reported Cases:** Johnson v. Thomas, 342 Ill. App.3d 382, 794 N.E.2d 919 (1st Dist. 2003); Jolly v. Shapiro & Kreisman, 237 F. Supp. 2d 888 (N.D. Ill. 2002); Parker v. 1-800 Bar None, a Financial Corp., Inc. 2002 WL 215530 (N.D. Ill. 2002); Jiang v. Allstate Ins. Co. (199 F.R.D. 267); Hill v. AMOCO Oil Co. 2003 WL 262424, 2001 WL 293628 (N.D. Ill. 2003); Roquet v. Arthur Anderson LLP 2002 WL 1900768 (N.D. Ill. 2002); White v. Financial Credit, Corp. 2001 WL 1665386 (N.D. Ill.); Ransom v. Gurnee Volkswagen 2001 WL 1241297 (N.D. Ill. 2001) and 2002 WL 449703 (N.D. Ill 2002); Doxie v. Impac Funding Corp. 2002 WL 31045387 (N.D. Ill. 2002); Levin v. Kluever & Platt LLC 2003 WL 22757763 and 2003 WL 22757764 (N.D. Ill. 2003); Pleasant v. Risk Management Alternatives 2003 WL 22175390 (N.D. Ill. 2003); Jenkins v. Mercantile Mortgage 231 F. Supp. 2d 737 (N.D. Ill. 2002); Hobson v. Lincoln Ins. Agency, Inc. 2001 WL 55528, 2001 WL 648958 (N.D. Ill. 2001), Anderson v. Lincoln Ins. Agency 2003 WL 291928, Hobson v. Lincoln Ins. Agency 2003 WL 338161 (N.D. Ill. 2003);  Handy v. Anchor Mortgage Corp., 464 F.3d 760 (7th Cir. 2006). He is a member of the Northern District of Illinois trial bar.

      **b.**    **Julie Clark** (neé Cobolovic) is a graduate of Northern Illinois University (B.A., 1997) and DePaul University College of Law (J.D., 2000). **Reported Cases:** Qualkenbush v. Harris Trust & Savings Bank 219 F. Supp.2d 935 (N.D. Ill.,2002); Covington-McIntosh v. Mount Glenwood Memory Gardens 2002 WL 31369747 (N.D.I ll.,2002), 2003 WL 22359626 (N.D. Ill. 2003); Ballard Nursing Center, Inc. v. GF Healthcare Products, Inc., 2007 U.S. Dist. LEXIS 84425 (N.D. Ill. Nov. 14, 2007); Record-A-Hit, Inc. v. Nat'l. Fire Ins. Co., No. 1-07-0684, 2007 Ill. App. LEXIS 1194 (Ill. App. 1st Dist. Nov. 13, 2007).

      **c.**    **Heather A. Kolbus** (neé Piccirilli) is a graduate of DePaul University (B.S. *cum laude,* 1997), and Roger Williams University School of Law (J.D., 2002). **Reported Cases:** Clark v. Experian Info. Solutions, Inc., 2004 U.S. Dist. LEXIS 28324 (D.S.C. Jan. 14, 2004); DeFrancesco v. First Horizon Home Loan Corp., 2006 U.S. Dist. LEXIS 80718 (S.D. Ill. Nov. 2, 2006); Jeppesen v. New Century Mortgage Corp., 2006 U.S. Dist. LEXIS 84035 (N.D. Ind. Nov. 17, 2006); Benedia v. Super Fair Cellular, Inc., 2007 U.S. Dist. LEXIS 71911 (N.D. Ill. Sept. 26, 2007).

      **d.**    **Thomas E. Soule** is a graduate of Stanford University (B.A., 2000), and the University of Wisconsin Law School (J.D., 2003). **Reported Cases:**  Murray v. Sunrise Chevrolet, Inc., 441 F.Supp.2d 940 (N.D. Ill. 2006); Iosello v. Leiblys, Inc., 502 F. Supp.2d 782 (N.D. Ill. 2007); Claffey v. River Oaks Hyundai, Inc., 486 F. Supp.2d 776 (N.D. Ill. 2007).

      **e.**    **Cassandra P. Miller** is a graduate of the University of Wisconsin – Madison (B.A. 2001) and John Marshall Law School (J.D. *magna cum laude* 2006). **Reported Cases:** Pietras v. Sentry Ins. Co., 513 F. Supp.2d 983 (N.D. Ill. 2007); Hernandez v. Midland Credit Mgmt., 2007 U.S. Dist. LEXIS 16054 (N.D. Ill. Sept. 25, 2007); Balogun v. Midland Credit Mgmt., 2007 U.S. Dist. LEXIS 74845 (S.D. Ind. Oct. 5, 2007).

4

f.    **Tiffany N. Hardy** (admitted NY, DC, IL) is a graduate of Tuskegee University (B.A. 1998) and Syracuse University College of Law (J.D.2001).

g.    **Zachary Jacobs** is a graduate of the University of South Dakota (B.S. 2002) and Chicago-Kent College of Law, Illinois Institute of Technology (J.D. 2007).

h.    **Rupali Shah** is a graduate of the University of Chicago (B.A. 2004) and University of Illinois College of Law (J.D. 2007).

i.    **Michael J. Aschenbrener** is a graduate of the University of Minnesota (B.A. 2001) and the Chicago-Kent College of Law, Illinois Institute of Technology (J.D. May 2007).

8.    The firm also has 15 legal assistants, as well as other support staff.

9.    Since its inception, the firm has recovered more than $500 million for consumers.

10.    The types of cases handled by the firm are illustrated by the following:

11.    **Mortgage charges and servicing practices:** The firm has been involved in dozens of cases, mostly class actions, complaining of illegal charges on mortgages and improper servicing practices. These include MDL-899, In re Mortgage Escrow Deposit Litigation, and MDL-1604, In re Ocwen Federal Bank FSB Mortgage Servicing Litigation, as well as the Fairbanks mortgage servicing litigation. Decisions in the firm's mortgage cases include: Christakos v. Intercounty Title Co., 196 F.R.D. 496 (N.D.Ill. 2000); Johnstone v. Bank of America, N.A., 173 F.Supp.2d 809 (N.D.Ill. 2001); Leon v. Washington Mut. Bank, F.A., 164 F.Supp.2d 1034 (N.D.Ill. 2001); Williamson v. Advanta Mortg. Corp., 1999 U.S. Dist. LEXIS 16374 (N.D.Ill., Oct. 5, 1999); McDonald v. Washington Mut. Bank, F.A., 2000 U.S. Dist. LEXIS 11496 (N.D.Ill., June 22, 2000); Metmor Financial, Inc. v. Eighth Judicial District Court, No. 23848 (Nev.Sup.Ct., Apr. 27, 1993); GMAC Mtge. Corp. v. Stapleton, 236 Ill.App.3d 486, 603 N.E.2d 767 (1st Dist. 1992), leave to appeal denied, 248 Ill.2d 641, 610 N.E.2d 1262 (1993); Leff v. Olympic Fed. S. & L. Ass'n, 1986 WL 10636 (N.D.Ill. 1986); Aitken v. Fleet Mtge. Corp., 1991 U.S.Dist. LEXIS 10420 (N.D.Ill. 1991), and 1992 U.S.Dist. LEXIS 1687 (N.D.Ill., Feb. 12, 1992); Poindexter v. National Mtge. Corp., 1991 U.S.Dist. LEXIS 19643 (N.D.Ill., Dec. 23, 1991), later opinion, 1995 U.S.Dist. LEXIS 5396 (N.D.Ill., April 24, 1995); Sanders v. Lincoln Service Corp., 1993 U.S.Dist. LEXIS 4454 (N.D.Ill. 1993); Robinson v. Empire of America Realty Credit Corp., 1991 U.S.Dist. LEXIS 2084 (N.D.Ill., Feb. 20, 1991); In re Mortgage Escrow Deposit Litigation, M.D.L. 899, 1994 U.S.Dist. LEXIS 12746 (N.D.Ill., Sept. 8, 1994); Greenberg v. Republic Federal S. & L. Ass'n, 1995 U.S.Dist. LEXIS 5866 (N.D.Ill., May 1, 1995).

12.    The recoveries in the escrow overcharge cases alone are over $250

million.  Leff was the seminal case on mortgage escrow overcharges.

      **13.**    The escrow litigation had a substantial effect on industry practices, resulting in limitations on the amounts which mortgage companies held in escrow.

      **14.**    **Bankruptcy:** The firm brought a number of cases complaining that money was being systematically collected on discharged debts, in some cases through the use of invalid reaffirmation agreements, including the national class actions against Sears and General Electric.  Conley v. Sears, Roebuck, 1:97cv11149 (D.Mass); Fisher v. Lechmere Inc., 1:97cv3065, (N.D.Ill.).  These cases were settled and resulted in recovery by nationwide classes. Cathleen Combs successfully argued the first Court of Appeals case to hold that a bankruptcy debtor induced to pay a discharged debt by means of an invalid reaffirmation agreement may sue to recover the payment.  Bessette v. Avco Financial Services, 230 F.3d 439 (1st Cir. 2000).

      **15.**    **Automobile sales and financing practices:** The firm has brought many cases challenging practices relating to automobile sales and financing, including:

      **a.**    Hidden finance charges resulting from pass-on of discounts on auto purchases.  Walker v. Wallace Auto Sales, Inc., 155 F.3d 927, 1998 U.S. App. LEXIS 22663 (7th Cir. 1998).

      **b.**    Misrepresentation of amounts disbursed for extended warranties. Taylor v. Quality Hyundai, Inc., 150 F.3d 689, 1998 U.S.App. LEXIS 16434 (7th Cir. 1998); Grimaldi v. Webb, 282 Ill.App.3d 174, 668 N.E.2d 39 (1st Dist. 1996), leave to appeal denied, 169 Ill.2d 566 (1996); Slawson v. Currie Motors Lincoln Mercury, Inc., 1995 U.S.Dist. LEXIS 451 (N.D.Ill., Jan. 5, 1995); Cirone-Shadow v. Union Nissan, Inc., 1995 U.S.Dist. LEXIS 1379 (N.D.Ill., Feb. 3, 1995), later opinion, 1995 U.S.Dist. LEXIS 5232 (N.D.Ill., April 20, 1995) (same); Chandler v. Southwest Jeep-Eagle, Inc., 1995 U.S. Dist. LEXIS 8212 (N.D.Ill., June 8, 1995); Shields v. Lefta, Inc., 1995 U.S.Dist. LEXIS 7807 (N.D.Ill., June 5, 1995).

      **c.**    Spot delivery.  Janikowski v. Lynch Ford, Inc., 1999 U.S. Dist. LEXIS 3524 (N.D.Ill., March 11, 1999); Diaz v. Westgate Lincoln Mercury, Inc., 1994 U.S.Dist. LEXIS 16300 (N.D.Ill. 1994); Grimaldi v. Webb, 282 Ill.App.3d 174, 668 N.E.2d 39 (1st Dist. 1996), leave to appeal denied, 169 Ill.2d 566 (1996).

      **d.**    Force placed insurance.  Bermudez v. First of America Bank Champion, N.A., 860 F.Supp. 580 (N.D.Ill. 1994); Travis v. Boulevard Bank, 1994 U.S.Dist. LEXIS 14615 (N.D.Ill., Oct. 13, 1994), modified, 880 F.Supp. 1226 (N.D.Ill., 1995); Moore v. Fidelity Financial Services, Inc., 884 F. Supp. 288 (N.D.Ill. 1995).

      **e.**    Improper obligation of cosigners.  Lee v. Nationwide Cassell, 174 Ill.2d 540, 675 N.E.2d 599 (1996); Taylor v. Trans Acceptance Corp., 267 Ill.App.3d 562, 641 N.E.2d 907 (1st Dist. 1994), leave to appeal denied, 159 Ill.2d 581, 647 N.E.2d 1017 (1995).

   **f.**  Evasion of FTC holder rule. <u>Brown v. LaSalle Northwest Nat'l</u> <u>Bank</u>, 148 F.R.D. 584 (N.D.Ill. 1993), 820 F.Supp. 1078 (N.D.Ill. 1993), and 1993 U.S.Dist. LEXIS 11419 (N.D.Ill., Aug. 13, 1993).

   **16.**  These cases also had a substantial effect on industry practices. The warranty cases, such as <u>Grimaldi</u>, <u>Gibson</u>, <u>Slawson</u>, <u>Cirone-Shadow</u>, <u>Chandler</u>, and <u>Shields</u>, resulted in the Federal Reserve Board's revision of applicable disclosure requirements, so as to prevent car dealers from representing that the charge for an extended warranty was being disbursed to a third party when that was not in fact the case.

   **17.**  **Predatory lending practices:**  The firm has brought numerous cases challenging predatory mortgage and "payday" lending practices, mostly as class actions. <u>Livingston v. Fast Cash USA, Inc.</u>, 753 N.E.2d 572 (Ind. Sup. Ct. 2001);  <u>Williams v. Chartwell</u> <u>Fin. Servs.</u>, 204 F.3d 748 (7th Cir. 2000); <u>Parker v. 1-800 Bar None, a Financial Corp., Inc.</u>, 01 C 4488, 2002 WL 215530 (N.D.Ill., Feb 12, 2002); <u>Gilkey v. Central Clearing Co.</u>, 202 F.R.D. 515 (E.D.Mich. 2001);  <u>Van Jackson v. Check 'N Go of Ill., Inc.</u>, 114 F.Supp.2d 731 (N.D.Ill. 2000), later opinion, 193 F.R.D. 544 (N.D.Ill. 2000), 123 F.Supp. 2d 1079 (N.D.Ill. 2000), later opinion, 123 F.Supp. 2d 1085 (N.D.Ill. 2000); <u>Henry v. Cash Today, Inc.</u>, 199 F.R.D. 566 (S.D.Tex. 2000); <u>Donnelly v. Illini Cash Advance, Inc.</u>, 00 C 94, 2000 WL 1161076, 2000 U.S. Dist. LEXIS 11906 (N.D.Ill., Aug. 14, 2000); <u>Jones v. Kunin</u>, 2000 U.S. Dist. LEXIS 6380 (S.D.Ill., May 1, 2000); <u>Davis v. Cash for Payday</u>, 193 F.R.D. 518 (N.D.Ill. 2000); <u>Reese v. Hammer Fin.</u> <u>Corp.</u>, 99 C 716, 1999 U.S. Dist. LEXIS 18812, 1999 WL 1101677 (N.D.Ill., Nov. 29, 1999); <u>Pinkett v. Moolah Loan Co.</u>, 1999 U.S. Dist. LEXIS 17276 (N.D.Ill., Nov. 1, 1999); <u>Gutierrez v.</u> <u>Devon Fin. Servs.</u>, 1999 U.S. Dist. LEXIS 18696 (N.D.Ill., Oct. 6, 1999); <u>Vance v. National</u> <u>Benefit Ass'n</u>, 99 C 2627, 1999 WL 731764, 1999 U.S. Dist. LEXIS 13846 (N.D.Ill., Aug. 26, 1999).

   **18.**  **Other consumer credit issues:**  The firm has also brought a number of other Truth in Lending and consumer credit cases, mostly as class actions, involving such issues as:

     **a.**  Phony nonfiling insurance.  <u>Edwards v. Your Credit Inc.</u>, 148 F.3d 427, 1998 U.S. App. LEXIS 16818 (5th Cir. 1998); <u>Adams v. Plaza Finance Co.</u>, 1999 U.S. App. LEXIS 1052 (7th Cir., January 27, 1999); <u>Johnson v. Aronson Furniture Co.</u>, 1997 U.S. Dist. LEXIS 3979 (N.D. Ill., March 31, 1997).

     **b.**  The McCarran Ferguson Act exemption.  <u>Autry v. Northwest</u> <u>Premium Services, Inc.</u>, 144 F.3d 1037, 1998 U.S. App. LEXIS 9564  (7th Cir. 1998).

     **c.**  Loan flipping.  <u>Emery v. American General</u>, 71 F.3d 1343 (7th Cir. 1995).  <u>Emery</u> limited the pernicious practice of "loan flipping," in which consumers are solicited for new loans and are then refinanced, with "short" credits for unearned finance charges and insurance premiums being given through use of the "Rule of 78s."

    **d.**      Home improvement financing practices. <u>Fidelity Financial Services, Inc. v. Hicks</u>, 214 Ill.App.3d 398, 574 N.E.2d 15 (1st Dist. 1991), leave to appeal denied, 141 Ill.2d 539, 580 N.E.2d 112; <u>Heastie v. Community Bank of Greater Peoria</u>, 690 F.Supp. 716 (N.D.Ill. 1989), later opinion, 125 F.R.D. 669 (N.D.Ill. 1990), later opinions, 727 F.Supp. 1133 (N.D.Ill. 1990), and 727 F.Supp. 1140 (N.D.Ill. 1990). <u>Heastie</u> granted certification of a class of over 6,000 in a home improvement fraud case.

    **e.**      Arbitration clauses. <u>Wrightson v. ITT Financial Services</u>, 617 So.2d 334 (Fla. 1st DCA 1993).

    **f.**      Insurance packing. <u>Elliott v. ITT Corp.</u>, 764 F.Supp. 102 (N.D.Ill. 1990), later opinion, 150 B.R. 36 (N.D.Ill. 1992).

    **19.**    **Automobile leases:** The firm has brought a number of a cases alleging illegal charges and improper disclosures on automobile leases, mainly as class actions. Decisions in these cases include <u>Lundquist v. Security Pacific Automotive Financial Services Corp.</u>, Civ. No. 5:91-754 (TGFD) (D.Conn.), <u>aff'd</u>, 993 F.2d 11 (2d Cir. 1993); <u>Kedziora v. Citicorp Nat'l Services, Inc.</u>, 780 F.Supp. 516 (N.D.Ill. 1991), later opinion, 844 F.Supp. 1289 (N.D.Ill. 1994), later opinion, 883 F.Supp. 1144 (N.D.Ill. 1995), later opinion, 1995 U.S.Dist. LEXIS 12137 (N.D.Ill., Aug. 18, 1995), later opinion, 1995 U.S.Dist. LEXIS 14054 (N.D.Ill., Sept. 25, 1995); <u>Johnson v. Steven Sims Subaru and Subaru Leasing</u>, 1993 U.S.Dist. LEXIS 8078 (N.D.Ill., June 9, 1993), and 1993 U.S.Dist. LEXIS 11694 (N.D.Ill., August 20, 1993); <u>McCarthy v. PNC Credit Corp.</u>, 1992 U.S.Dist. LEXIS 21719 (D.Conn., May 27, 1992); <u>Kinsella v. Midland Credit Mgmt., Inc.</u>, 1992 U.S.Dist. LEXIS 1405, 1992 WL 26908 (N.D.Ill. 1992); <u>Highsmith v. Chrysler Credit Corp.</u>, 18 F.3d 434 (7th Cir. 1994); <u>Black v. Mitsubishi Motors Credit of America, Inc.</u>, 1994 U.S.Dist. LEXIS 11158 (N.D.Ill., August 10, 1994); <u>Simon v. World Omni Leasing Inc.</u>, 146 F.R.D. 197 (S.D.Ala. 1992). Settlements in such cases include <u>Shepherd v. Volvo Finance North America, Inc.</u>, 1-93-CV-971 (N.D.Ga.)($8 million benefit); <u>McCarthy v. PNC Credit Corp.</u>, 291 CV 00854 PCD (D.Conn.); <u>Lynch Leasing Co. v. Moore</u>, 90 CH 876 (Circuit Court of Cook County, Illinois) (class in auto lease case was certified for litigation purposes, partial summary judgment was entered, and case was then settled); <u>Blank v. Nissan Motor Acceptance Corp.</u>, 91 L 8516 (Circuit Court of Cook County, Illinois); <u>Mortimer v. Toyota Motor Credit Co.</u>, 91 L 18043 (Circuit Court of Cook County, Illinois); <u>Duffy v. Security Pacific Automotive Financial Services, Inc.</u>, 93-729 IEG (BTM) (S.D.Cal., April 28, 1994).

    **20.**    <u>Lundquist</u> and <u>Highsmith</u> are leading cases; both held that commonly-used lease forms violated the Consumer Leasing Act. As a result of the <u>Lundquist</u> case, the Federal Reserve Board completely revamped the disclosure requirements applicable to auto leases, resulting in vastly improved disclosures to consumers.

    **21.**    **Collection practices:** The firm has brought a number of cases under the Fair Debt Collection Practices Act, both class and individual. Decisions in these cases include: <u>Jenkins v. Heintz</u>, 25 F.3d 536 (7th Cir. 1994), aff'd 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995);

Johnson v. Revenue Management Corp., 169 F.3d 1057, 1999 U.S. App. LEXIS 3142 (7th Cir. 1999); Keele v. Wexler & Wexler, 1996 U.S.Dist. LEXIS 3253 (N.D.Ill., March 18, 1996) (class), 1995 U.S.Dist. LEXIS 13215 (N.D.Ill. 1995) (merits), aff'd, 149 F.3d 589, 1998 U.S.App. LEXIS 15029 (7th Cir. 1998); Mace v. Van Ru Credit Corp., 109 F.3d 338, 1997 U.S.App. LEXIS 5000 (7th Cir., Mar. 17, 1997); Maguire v. Citicorp Retail Services, Inc., 147 F.3d 232, 1998 U.S.App. LEXIS 16112 (2d Cir. 1998); Young v. Citicorp Retail Services, Inc., 1998 U.S.App. LEXIS 20268 (2d Cir. 1998); Charles v. Lundgren & Assocs., P.C., 119 F.3d 739, 1997 U.S. App. LEXIS 16786 (9th Cir. 1997); Avila v. Rubin, 84 F.3d 222 (7th Cir. 1996), aff'g Avila v. Van Ru Credit Corp., 1995 U.S.Dist. LEXIS 461 (N.D.Ill., Jan. 10, 1995), later opinion, 1995 U.S.Dist. LEXIS 1502 (N.D.Ill., Feb. 6, 1995), later opinion, 1995 U.S.Dist. LEXIS 17117 (N.D.Ill., Nov. 14, 1995); Tolentino v. Friedman, 833 F.Supp. 697 (N.D.Ill. 1993), aff'd in part and rev'd in part, 46 F.3d 645 (7th Cir. 1995); Blakemore v. Pekay, 895 F.Supp.972 (N.D.Ill. 1995); Oglesby v. Rotche, 1993 U.S.Dist. LEXIS 15687 (N.D.Ill., Nov. 4, 1993), later opinion, 1994 U.S.Dist. LEXIS 4866 (N.D.Ill., April 15, 1994); Laws v. Cheslock, 1999 U.S.Dist. LEXIS 3416 (N.D.Ill., Mar. 8, 1999);Davis v. Commercial Check Control, Inc., 1999 U.S. Dist. LEXIS 1682 (N.D.Ill., Feb. 12, 1999); Hoffman v. Partners in Collections, Inc., 1993 U.S.Dist. LEXIS 12702 (N.D.Ill., Sept. 15, 1993); Vaughn v. CSC Credit Services, Inc., 1994 U.S.Dist. LEXIS 2172 (N.D.Ill., March 1, 1994), adopted, 1995 U.S.Dist. LEXIS 1358 (N.D.Ill., Feb. 3, 1995); Beasley v. Blatt, 1994 U.S.Dist. LEXIS 9383 (N.D.Ill., July 14, 1994); Taylor v. Fink, 1994 U.S.Dist. LEXIS 16821 (N.D.Ill., Nov. 23, 1994); Gordon v. Fink, 1995 U.S.Dist. LEXIS 1509 (N.D.Ill., Feb. 7, 1995); Brujis v. Shaw, 876 F.Supp. 198 (N.D.Ill. 1995). Settlements in such cases include Boddie v. Meyer, 93 C 2975 (N.D.Ill.); and Cramer v. First of America Bank Corporation, 93 C 3189 (N.D.Ill.).

22.     Jenkins v. Heintz is a leading decision regarding the liability of attorneys under the Fair Debt Collection Practices Act.  I argued it before the Supreme Court and Seventh Circuit.  Avila v. Rubin is a leading decision on phony "attorney letters."

23.     **Fair Credit Reporting Act:** The firm has filed numerous cases under the Fair Credit Reporting Act, primarily as class actions.  One line of cases alleges that lenders and automotive dealers, among others, improperly accessed consumers' credit information, without their consent and without having a purpose for doing so permitted by the FCRA.   Important decisions in this area include: Cole v. U.S. Capital, Inc., 389 F.3d 719 (7th Cir. 2004), Murray v. GMAC Mortgage Corp., 434 F.3d 948 (7th Cir. 2006); Perry v. First National Bank, 459 F.3d 816 (7th Cir. 2006); Murray v. Sunrise Chevrolet, Inc., 441 F. Supp.2d 940 (N.D. Ill. 2006); Murray v. GMAC Mortgage Corp., 05 C 1229, _____ F.Supp.2d _____, 2007 U.S. Dist. LEXIS 26726 (N.D.Ill. April 10, 2007); Shellman v. Countrywide Home Loans, Inc., 1:05-CV-234-TS, 2007 U.S. Dist. LEXIS 27491 (N.D.Ind.,  April 12, 2007); In re Ocean Bank, 06  C 3515, 2007 U.S. Dist. LEXIS 28973 (N.D.Ill., March 16, 2007), later opinion,  2007 U.S. Dist. LEXIS 29443 (N.D. Ill., Apr. 9, 2007); Asbury v. People's Choice Home Loan, Inc., 05 C 5483, 2007 U.S. Dist. LEXIS 17654 (N.D.Ill., March 12, 2007); Claffey v. River Oaks Hyundai, Inc., 238 F.R.D. 464 (N.D.Ill. 2006); Murray v. IndyMac Bank, FSB, 461 F.Supp.2d 645 (N.D.Ill. 2006); Kudlicki v. Capital One Auto Finance, Inc., 2006 U.S. Dist. LEXIS 81103 (N.D. Ill., Nov. 2, 2006); Thomas

v. Capital One Auto Finance, Inc., 2006 U.S. Dist. LEXIS 81358 (N.D. Ill., Oct. 24, 2006);
Pavone v. Aegis Lending Corp., 2006 U.S. Dist. LEXIS 62157 (N.D. Ill., Aug. 31, 2006); Murray
v. E*Trade Financial Corp., 2006 U.S. Dist. LEXIS 53945 (N.D. Ill., July 19, 2006); Bonner v.
Home 123 Corp., 2006 U.S. Dist. LEXIS 37922 (N.D. Ind., May 25, 2006); Murray v. Sunrise
Chevrolet , Inc., 2006 U.S. Dist. LEXIS 19626 (N.D. Ill., Mar. 30, 2006); and Murray v. Finance
America, LLC, 2006 U.S. Dist. LEXIS 7349 (N.D. Ill., Jan 5, 2006). More than 15 such cases
have been settled on a classwide basis.

      24.    **Class action procedure:**  Important decisions include Crawford v.
Equifax Payment Services, Inc., 201 F.3d 877 (7th Cir. 2000); Blair v. Equifax Check Services,
Inc., 181 F.3d 832 (7th Cir. 1999); Mace v. Van Ru Credit Corp., 109 F.3d 338, 344 (7th Cir.
1997); and Gordon v. Boden, 224 Ill.App.3d 195, 586 N.E.2d 461 (1st Dist. 1991).

      25.    **Landlord-tenant:** The firm has brought a number of class actions against
landlords for various matters including failing to pay interest on security deposits or
commingling security deposits, breach of the warranty of habitability, improper late charges, and
various violations of the CRLTO. Reported decisions include: Wang v. Williams, 343 Ill. App. 3d
495; 797 N.E.2d 179 (5th Dist. 2003); Onni v. Apartment Management and Investment Co., 344
Ill. App. 3d 1099; 801 N.E.2d 586 (2d Dist. 2003) (case challenging improper late charges,
which later settled on a class basis for $200,000); Dickson v. West Koke Mill Village P'Ship,
329 Ill.App.3d 341 (4th Dist. 2002). Illustrative cases include: Hale v. East Lake Management &
Developmental Corp., et al., 00 CH 16139, in the Cook County Circuit Court, Judge Madden
granted class certification for tenants who had not been paid their security deposit interest after
the end of each twelve month rental period. The East Lake case later settled on a classwide basis
for over $400,000.

      26.    Some of the other reported decisions in our cases include:  Elder v.
Coronet Ins. Co., 201 Ill.App.3d 733, 558 N.E.2d 1312 (1st Dist. 1990); Smith v. Keycorp Mtge.,
Inc., 151 Bankr. 870 (N.D.Ill. 1992); Gordon v. Boden, 224 Ill.App.3d 195, 586 N.E.2d 461 (1st
Dist. 1991), leave to appeal denied, 144 Ill.2d 633, 591 N.E.2d 21, cert. denied, U.S. (1992);
Armstrong v. Edelson, 718 F.Supp. 1372 (N.D.Ill. 1989); Newman v. 1st 1440 Investment, Inc.,
1993 U.S.Dist. LEXIS 354 (N.D.Ill. 1993); Mountain States Tel. & Tel. Co. v. District Court,
778 P.2d 667 (Colo. 1989); Disher v. Fulgoni, 124 Ill.App.3d 257, 464 N.E.2d 639, 643 (1st
Dist. 1984); Harman v. Lyphomed, Inc., 122 F.R.D. 522 (N.D.Ill. 1988); Haslam v. Lefta, Inc.,
1992 U.S.Dist. LEXIS 3623 (N.D.Ill., March 25, 1994); Source One Mortgage Services Corp. v.
Jones, 1994 U.S.Dist. LEXIS 333 (N.D.Ill., Jan. 13, 1994).

      27.    Gordon v. Boden is the first decision approving "fluid recovery" in an
Illinois class action. Elder v. Coronet Insurance held that an insurance company's reliance on lie
detectors to process claims was an unfair and deceptive trade practice.

      All of the preceding is true and correct.

Executed on this day, June 18, 2008, in Chicago, Illinois.

_____
Daniel A. Edelman

EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)